IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| **ALEXIS KELLER,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | 8:09CV92 |
| v. ) | |
| ) | ORDER |
| **GEORGIA CHECK RECOVERY, INC.,** ) | |
| ) | |
| Defendant. ) | |

This matter comes before the court on the plaintiff's Petition for Attorneys' Fees Pursuant to the Fair Debt Collection Practices Act (Filing No. 31). The plaintiff filed evidence attached to the petition. The defendant filed a brief (Filing No. 36) in opposition to the plaintiff's petition. The plaintiff filed a brief (Filing No. 37) with an attached index of evidence in reply.

## BACKGROUND

On March 13, 2009, the plaintiff initiated the instant action for actual and statutory damages based on alleged violations of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692, *et seq.* **See** Filing No. 1 - Complaint. Specifically, the plaintiff alleges the defendant violated the FDCPA, 15 U.S.C. § 1692e, by using false or unconscionable means to attempt collection of debt; implied the plaintiff had committed a crime; implied that nonpayment would result in the plaintiff's arrest; and threatened to take action that cannot legally be taken. *Id.* ¶ 15. The plaintiff's claim is based on the following facts alleged in the complaint.

> 9. During the first week of February 2009, Plaintiff received a letter from Defendant dated January 2, 2009 regarding the collection of debt allegedly owed by Plaintiff to Perkins.
> 10. On February 11, 2009, Plaintiff telephoned Defendant and spoke with Ms. Rutledge, a duly authorized representative.
> 11. Defendant advised Plaintiff that she was collecting a debt for Perkins and that Plaintiff allegedly owed Perkins $135.00.
> 12. Defendant advised Plaintiff that Plaintiff had until February 12, 2009 at 12:00 p.m. to pay the alleged debt or a warrant would be issued for Plaintiff's arrest.

> 13.   Defendant inquired of Plaintiff as to whether Plaintiff had ever been placed in jail for writing bad checks. Plaintiff replied "no" and Defendant stated: "have a nice day" and disconnected the call.
> 14.   The alleged debt of Plaintiff was incurred for personal, family, or household services.

Filing No. 1 - Complaint.  The plaintiff further alleged she was seven months pregnant at the time of the communication and suffered a sever panic attack based on the statements made by the defendant. *Id.* ¶ 17. Based on her allegations, the plaintiff stated she suffers personal humiliation, embarrassment, mental anguish, and emotion distress. *Id.* ¶ 16. In addition to unspecified actual damages, the plaintiff sought $1,000 in statutory damages and her attorneys' fees and costs. *Id.* at 4.

On May 29, 2009, the defendant filed an Answer (Filing No. 14) and an Offer of Judgment (Filing No. 15), without an admission of liability. As part of the offer of judgment, the defendant offered to resolve the claim of indebtedness ($135) and pay the plaintiff $1,100 to include any claim of attorneys' fees and costs. **See** Filing No. 15. On August 18, 2009, the court entered an initial progression order. **See** Filing No. 25. On August 25, 2009, the case was transferred to the undersigned magistrate judge for final disposition based on the consent of the parties pursuant to 28 U.S.C. § 636. **See** Filing No. 26. The next day, the parties notified the court they had reached a settlement on the plaintiff's substantive claims. **See** Filing No. 27. Specifically, the plaintiff accepted the defendant's offer to pay the plaintiff $627, with $27 to be paid by the plaintiff to the original creditor on the alleged debt. **See** Filing No. 31 - Petition p. 2. However, the parties could not resolve the issue of the amount of attorneys' fees, which dispute should be handled by motion. **See** Filing No. 27. The dispute for attorneys' fees has now been fully briefed.

The plaintiff seeks an attorney's fee award in the amount of $4,360, based upon the lodestar method. **See** Filing No. 31 - Petition p. 7 (seeking $3,660); Filing No. 37 - Reply p. 5 (seeking an additional $700 to litigate fee issue). The plaintiff states this amount includes two attorneys' work on this case:  Mr. Smith for 3.1 hours at a rate of $350 per hour and Mr. Marco for 13.1 hours at a rate of $250 per hour. *Id.* The plaintiff's submissions includes descriptions of the subject attorneys' education and experience,

attorney time records, and arguably comparable rates charged by other attorneys. **See** Filing No. 31 - attached evidence. The plaintiff also seeks $350 for the cost incurred in filing the complaint in this matter. **See** Filing No. 31 - Petition p. 9. The plaintiff contends the amount sought is reasonable particularly where, as here, the defendant's alleged conduct was abusive rather than merely a technical violation of the FDCPA. **See** Filing No. 37 - Reply p. 1-2. Additionally, the plaintiff argues the defendant failed to make reasonable settlement offers during the early stages of this case. *Id.* at 4. Finally, the plaintiff asserts any efforts made to obtain the reasonable attorney's fees is also recoverable, indicating justification for increased settlement offers. *Id.* at 5.

The defendant opposes the total amount sought, arguing a more reasonable approach to the fee award is to balance the actual result of the matter with the attorneys' efforts. **See** Filing No. 36 - Defendant's Brief p. 2-3. Further, the defendant argues the plaintiff's attorneys should not benefit from delaying this matter through their own actions. *Id.* at 3. Specifically, the plaintiff sent the defendant a demand letter for settlement in the amount of $2,500, on February 17, 2009. *Id.* At that time, the plaintiff's attorneys had only invested $805 of attorney time by their own calculations. *Id.* at 4. However, the plaintiff made a revised settlement demand of $4,500, on July 8, 2009. *Id.* at 4. By that time, the plaintiff's attorneys had invested $2,010 of attorney time by their own calculations. *Id.* The defendant contends this creep upward of fees was materially responsible for extending, rather than resolving the litigation. *Id.* Finally, the defendant contends one reason for agreeing to settle the matter was to avoid higher litigation costs to vindicate the defendant since the defendant does not admit liability. *Id.* at 3. The defendant does not oppose the amount of costs sought or suggest an actual amount for the fee award.

## ANALYSIS

Generally, parties to a lawsuit must bear their own costs. However, the FDCPA provides for an award of attorney's fees by stating:

> any debt collector who fails to comply with any provision of this
> subchapter with respect to any person is liable . . .

*  *  *

> (3) in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court.

15 U.S.C. § 1692k(a).

The parties do not dispute the plaintiff is entitled to an award of attorney's fees as if she prevailed on her claims. **See, e.g.,** Filing No. 36 - Defendant's Brief p. 1. The applicant for an award of attorney's fees has the burden of showing both the claimed rate and the number of hours are reasonable. See *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 564-66 (1986). "In calculating the reasonable fee, a court must be mindful of Congress' intent to encourage the enforcement of constitutional rights through the award of fees which are adequate to attract competent counsel, but which do not produce windfalls to attorneys." *Shakopee Mdewakanton Sioux Cmty. v. City of Prior Lake, Minn.*, 771 F.2d 1153, 1160 (8th Cir. 1985) (internal quotation and citation omitted). "There is 'no precise rule or formula' for making fee determinations in cases with only partial success." *Warnock v. Archer*, 397 F.3d 1024, 1026 (8th Cir. 2005) (**quoting** *Hensley v. Eckerhart*, 461 U.S. 424, 436-37 (1983)). Absent the ability to separate out which hours were billed for which issues, a court "may simply reduce the award to account for the [plaintiff's] limited success." *Warnock*, 397 F.3d at 1026 (alteration in original) (**quoting** *Hensley*, 461 U.S. at 436-37).

To calculate a reasonable attorney's fee, the court may rely on the "lodestar" method. *Farmers Coop Co. v. Senske & Son Transfer Co.*, 572 F.3d 492, 500 (8th Cir. 2009). The court calculates the "lodestar" by determining the number of hours reasonably expended multiplied by the applicable hourly market rate for the relevant legal services. *ACLU Neb. Found. v. City of Plattsmouth, Neb.*, 199 F. Supp. 2d 964, 966-67 (D. Neb. 2002). The court determines the rate by reference to the "relevant community," typically where the case was filed. **See** *Farmers Coop*, 572 F.3d at 500. In any event, the lodestar may be enhanced or reduced based on circumstances such as partial or incomplete success and other factors specific to the case. *ACLU*, 199 F. Supp. at 967; **see** *Farmers Coop*, 572 F.3d at 500. While the lodestar method is "[t]he most useful starting point for

determining the amount of a reasonable fee," . . . "[i]t remains for the district court to determine what fee is 'reasonable.'" *Hensley*, 461 U.S. at 433.

The plaintiff suggests using the lodestar method to find that the attorneys are entitled to fees in the amount calculated by multiplying the number of hours expended by the applicable hourly market rate for the relevant legal services. The defendant does not challenge the number of hours spent or the hourly rate relied upon by the plaintiff's counsel. However, the defendant challenges whether the lodestar method results in a reasonable award under the circumstances.

The court considers the award sought in this case to be excessive in a case in which the settlement award for the plaintiff totaled $600. **See** *Altergott v. Modern Collection Techniques, Inc.*, 864 F. Supp. 778, 783 (N.D. Ill. 1994) (finding that the defendant "should not have to shoulder the entire financial burden . . . .caused by [plaintiff counsel's] failure to make a reasonable assessment of the value of their case."). The plaintiff suggests her success was substantial because she received damages far in excess of her underlying debt. However, the time invested by the plaintiff's attorneys in this case was simply excessive in light of the value of the plaintiff's claim and the success achieved. The plaintiff did not allege the defendant's practices were frequent and persistent. The nature of the defendant's noncompliance with fair debt collection practices, therefore, does not weigh in favor of a disproportionately high award of attorneys' fees for the sake of punishment or deterrence, or for the sake of providing a strong incentive for lawyers to pursue similar cases in the future. In addition, it appears more time was spent by counsel seeking fees than on securing a speedy and just result for the plaintiff. **See** *Hensley*, 461 U.S. at 437 ("A request for attorney's fees should not result in a second major litigation.").

The court will not parse through the billings in an attempt to determine the reasonableness of each and every entry in light of the limited success achieved by the plaintiff in this case. Instead, the court concludes that $2,400.00, more than four times the settlement award for the plaintiff, is a reasonable attorneys' fee award in this case. Finally, the court will permit an award for the unchallenged cost of filing in the amount of $350. Upon consideration,

**IT IS ORDERED that:**

1. The plaintiff's Petition for Attorneys' Fees Pursuant to the Fair Debt Collection Practices Act (Filing No. 31) is granted in part, and denied in part, as set forth herein.

2. The defendant is directed to pay to the plaintiff her reasonable attorneys' fees in connection with this matter in the amount of $2,400.00. Arrangements for payment shall be made forthwith by and between counsel for plaintiff and counsel for defendant.

3. The plaintiff is entitled to costs in the amount of $350.

DATED this 18th day of December, 2009.

BY THE COURT:

s/Thomas D. Thalken
United States Magistrate Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.